**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| VIVIAN A. HOOD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HAWKER BEECHCRAFT CORPORATION, )<br>)<br>Defendant. )<br>) | **CIVIL ACTION**<br><br>No. 09-1085-MLB |

**MEMORANDUM AND ORDER**

This case comes before the court on plaintiffs's partial motion for summary judgment (Doc. 43) and defendant's motion for summary judgment (Doc. 42).[1] The motions have been fully briefed and are ripe for decision. (Docs. 44, 57, 58, 66, 67). Plaintiff, Vivian Hood, brings an interference/entitlement and retaliation claims against her former employer, Hawker Beechcraft Corporation,[2] under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq.

**I.  Facts**[3]

Plaintiff began working for defendant on March 5, 1999, but was terminated on February 2, 2002, as part of a reduction in force.

---

[1] Plaintiff has also filed a motion for the court to take judicial notice of facts concerning prescription medicine. (Doc. 46). Defendant has not filed a response. Plaintiff's motion is therefore granted.

[2] Defendant is formerly known as Raytheon Aircraft Company.

[3] The following facts are either uncontroverted or, if controverted, taken in the light most favorable, along with all favorable inferences, to plaintiff. See Hall v. United Parcel Serv., No. Civ. A. 992467-CM, 2000 WL 1114841, at *5 (D. Kan. July 31, 2000) (citing Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998)). To the extent relevant, the factual disagreements between the parties will be noted.

Plaintiff was then rehired on September 30, 2002. Defendant terminated plaintiff's employment in March 2007 due to a Rules of Conduct violation but she was quickly reinstated. Plaintiff was ultimately terminated on September 18, 2007. During her employment, plaintiff was an hourly compensated employee who was part of the bargaining unit covered by the collective bargaining agreement (CBA) between defendant and the International Association of Machinists and Aerospace Workers ("IAM").

### A. Attendance Policy

Defendant has an attendance policy in place which provides 64 hours per year of earned time off (ETO) to an employee with two years of service. ETO is advanced on the employee's anniversary date. An employee with two years of service also earns 80 hours of vacation per year. When the ETO or vacation is properly used, an employee does not receive an attendance infraction. Employees also do not receive attendance infractions for approved FMLA leave.

Under the version of the attendance policy that was in effect from 2005 to the time of plaintiff's termination, an unexcused absence of more than four hours would result in four infractions. A full day absence results in two infractions when notification is given but escalates to four infractions if there is no notification. If an employee incurs four infractions within a 180 day period, she would receive a Step 1 written reprimand. If an employee incurs an additional four infractions in a 180 day period within one year of receiving a Step 1 written reprimand, she would receive a Step 2 written reprimand. An additional four infractions occurring in a 180 day period within one year following receipt of a Step 2 written

-2-

reprimand results in a Step 3 reprimand, which is termination.  Under the policy, termination also occurs if an employee was absent for five or more consecutive working days without a valid reason, even if the absence was properly reported. Termination was also the consequence if an employee failed to properly notify the company of an absence for three consecutive working days, or if the employee failed to properly notify the company of an absence on three non-consecutive working days in a rolling twelve-month period.

**B. Plaintiff's Absences prior to Termination**[4]

On June 30, 2006, plaintiff was absent and received two attendance infractions.  Plaintiff was counseled about her attendance on July 11.  On August 17, plaintiff had a partial absence but did not receive any infractions.  Plaintiff was then absent on September 22, 29 and October 5 through 20.  Plaintiff requested and received FMLA leave for the absences.  On October 5, plaintiff had sinus surgery. Plaintiff then received leave to recover from her surgery and attend follow up appointments with her physician.

On November 12, plaintiff was absent and assessed two attendance infractions.  Plaintiff received a Step 1 written warning on November 12 because she received four infractions within a 180-day period. Plaintiff was then absent on November 22 and received two additional attendance infractions.  On March 2, 2007, plaintiff did not work her entire shift.  Plaintiff had used all of her available ETO for the year so she received two more infractions which resulted in a Step 2

---

[4] Although the parties have detailed plaintiff's absences, the court will specifically note the absences that are relevant to the pending motions.

-3-

written reprimand.

Plaintiff was terminated in March 2007 for violation of Rule of Conduct No. 3 - dishonesty, including falsification of company records. Plaintiff was reinstated on a last chance agreement on March 13. The agreement required plaintiff to adhere to all of defendant's conditions of employment. Plaintiff was absent again on March 19 and incurred two attendance infractions.

Plaintiff was absent from work on Friday September 14 and sought FMLA leave. On that day, she had an appointment with her treating physician, Dr. Patricia Petrakis. Plaintiff was severely congested and Dr. Petrakis noted that plaintiff's condition was related to her surgery in October 2006. Dr. Petrakis stated that plaintiff had severe sinusitis and was at risk for serious complications. Dr. Petrakis completed a certification of health care provider form which was submitted to support plaintiff's request for FMLA leave. The form noted that plaintiff would be unable to work for "3-4 days." The form also stated that plaintiff would need a follow up office visit and a referral to a specialist. Dr. Petrakis prescribed antibiotics and steroids for plaintiff's condition.

Plaintiff returned to work on Monday September 17. Nita Long, the employee who reviewed FMLA requests, denied plaintiff's request for FMLA leave. Long stated that plaintiff's request did not qualify because she did not request more than three days for leave. As a result, plaintiff incurred an additional two attendance infractions. Those two infractions resulted in a Step 3 written reprimand and a subsequent termination.

Plaintiff filed this action alleging that defendant interfered

with her right to leave under the FMLA and that defendant terminated her employment in retaliation of her rights under the FMLA. Both parties have moved for summary judgment.

## II.     Summary Judgment Standards

The rules applicable to the resolution of this case, now at the summary judgment stage, are well-known and are only briefly outlined here. Federal Rule of Civil Procedure 56(c) directs the entry of summary judgment in favor of a party who "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" if sufficient evidence exists so that a rational trier of fact could resolve the issue either way and an issue is "material" if under the substantive law it is essential to the proper disposition of the claim. Adamson v. Multi Community Diversified Svcs., Inc., 514 F.3d 1136, 1145 (10th Cir. 2008). When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). If so, the court cannot grant summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Where, as here, the parties file cross motions for summary judgment, the court is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts. James Barlow Family Ltd. P'ship v. David M. Munson,

Inc., 132 F.3d 1316, 1319 (10th Cir. 1997) (citing <u>Harrison W. Corp. v. Gulf Oil Co.</u>, 662 F.2d 690, 692 (10th Cir. 1981)).

### III. Analysis

#### A. FMLA Interference

The FMLA affords a qualified employee twelve weeks of unpaid leave each year for serious health problems that prevent the employee from performing his or her job. 29 U.S.C. § 2612(a)(1)(D).

> To make out a prima facie claim for FMLA interference, a plaintiff must establish (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

<u>Jones v. Denver Public Schools</u>, 427 F.3d 1315, 1319 (10th Cir. 2005). If a plaintiff establishes interference with her FMLA rights, then the employer bears the burden of proof on the third element. **Id. at 1172.**

An employer may require the employee to provide the requisite medical certification before she is entitled to FMLA leave. 29 U.S.C. § 2613(a); <u>Myers v. Dolgencorp, Inc.</u>, 2006 WL 408242, at *6 (D. Kan. Feb. 15, 2006).

> An employer may require that an employee's leave . . . due to the employee's own serious health condition that makes the employee unable to perform one or more of the essential functions of the employee's position, be supported by a certification issued by the health care provider of the employee or the employee's family member.

29 C.F.R. § 825.305(a). An employer may also require the employee to comply with its notice requirements. <u>Allender v. Raytheon Aircraft Co.</u>, 339 F. Supp.2d 1196, 1206 (D. Kan. 2004).

There is no dispute that plaintiff was entitled to FMLA leave on September 17. The issue currently before the court is whether plaintiff's condition on September 14 was a serious health condition.

-6-

Defendant asserts that plaintiff's condition was not a serious health condition.  Also, defendant contends that plaintiff has failed to establish causation.

A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition" that involves either inpatient care or "continuing treatment by a health care provider." 29 C.F.R. § 825.114(a)(effective to January 15, 2009).  The regulations delineate five situations that qualify as a "serious health condition involving continuing treatment by a health care provider."  See id. at § 825.114(a)(2).  The situations relevant to this case are as follows:

> (a) For purposes of FMLA, "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:
>
> (2) Continuing treatment by a health care provider. A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:
>
> (I) A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>
> (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

\* \* \*

>   (iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:
>
>   (A) Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
>
>   (B) Continues over an extended period of time (including recurring episodes of a single underlying condition); and
>
>   (C) May cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.).

29 C.F.R. § 825.114 (effective to January 15, 2009).

Defendant spends a considerate amount of time arguing that plaintiff's condition does not qualify as a serious health condition because the incapacity did not last longer than three days. Plaintiff does not dispute the fact that she was only incapacitated for a total of three days in September 2007. In interpreting section 825.114(a)(2)(I)(A), the Tenth Circuit has held that "the health condition must be sufficiently serious that it entails an absence of more than three consecutive calendar days during which the employee obtained treatment by a health care provider at least two times (or one time followed by a regimen of continuing treatment)." Jones, 427 F.3d at 1321. The Circuit has also explained that the phrase, "and any subsequent treatment or period of incapacity relating to the same condition," does not extend the period during which the employee may obtain the two treatments, but extends "the temporal dimension of the serious medical condition so as to require the employer to grant leave for subsequent treatments or periods of impairment even if they would not independently qualify." Id. An example given by the Circuit is to allow a subsequent absence of a single day to qualify for FMLA

-8-

leave if it is a "flare-up" that is related to the prior serious health condition. Id. at 1322.

Plaintiff's absence in October 2006 clearly qualified as a serious health condition and plaintiff testified that she had at least three follow up visits during her FMLA leave. Plaintiff's physician stated that her subsequent absence in September 2007 is related to the surgery and illness she had in October 2006. Although eleven months had passed since the surgery, the physician believed that the infection in September was related to the initial diagnosis and a failure to treat would result in complications. Defendant has failed to provide any authority which states that subsequent treatment for a complication arising after a serious health condition must be completed within a certain time frame. Therefore, the court finds that there is a genuine dispute of material fact as to whether plaintiff's illness in September 2007 has related to the surgery in October 2006. If it was related to the serious health condition in October 2006, then the treatment received in September 2007 would have qualified for FMLA leave.

Moreover, the court also believes that there is a dispute of fact as to whether plaintiff's sinusitis would qualify as a chronic serious health condition. In Hayduk v. City of Johnstown, 580 F. Supp.2d 429, 466 (W.D. Pa. 2008), the court determined that the plaintiff's claims of chronic sinusitis were sufficient to create a dispute of material fact because the plaintiff had been on prescription medication on more than one occasion and had seen a physician on at least two occasions. In this case, plaintiff's sinusitis was severe enough that it resulted in surgery and a

subsequent two week recovery. Clearly, plaintiff's physician was concerned that her flare-up in September 2007 would result in complications of her condition.[5]

Defendant contends that two visits in one year is not sufficient to qualify as a chronic condition because the visits were not once every six months. To support defendant's position, defendant cites to Taylor v. Autozoners, LLC, ---F. Supp.2d---, 2010 WL 569560, *7 (W.D. Tenn. Feb. 11, 2010), which held that "[d]octor visits for treatment under subsection (iii) should be at least biannual." Defendant, however, has not cited to any additional authority. Moreover, the most recent version of the C.F.R. states that the periodic visits are to be defined as "at least twice a year." 29 C.F.R. § 825.115(c)(effective Jan. 16, 2009). The C.F.R. does not require that the two visits to occur biannually. This latter version of the C.F.R. would support a finding that the prior version should not be read so narrowly.

The court finds that plaintiff has established that a disputed fact exists as to whether her condition in September 2007 was a serious health condition which would have qualified for leave under the FMLA.

Defendant argues alternatively that plaintiff has failed to

---

[5] Defendant argues that it is not a chronic serious health condition because Dr. Petrakis did not state as such on the health form. The certification form asked the following question: "If the condition is a chronic condition or pregnancy, state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity." Dr. Petrakis responded by writing an "0" with a line through the middle. Defendant interprets this to mean that plaintiff did not have a chronic condition. Defendant, however, did not ask Dr. Petrakis what her answer meant and this court will not infer an answer based on a symbol.

prove causation.  Defendant's argument is that the reason for plaintiff's termination was the attendance policy.  Defendant's position, however, is nonsensical.  If plaintiff was entitled to leave on September 14, she would have not received two attendance infractions and therefore would not have been terminated.  Defendant offers no other reason for plaintiff's termination than the attendance policy.  Therefore, the court finds that a reasonable jury could determine that plaintiff was terminated in violation of the FMLA.

Both defendant and plaintiff's motions for summary judgment on plaintiff's FMLA interference claim must be denied as there are disputes as to material facts.

### B.  **FMLA Retaliation**

Finally, the court turns to plaintiff's claim of retaliation.  To state a prima facie case of retaliation, plaintiff must show that: (1) she engaged in a protected activity; (2) defendant took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.  Metzler v. Federal Home Loan Bank of Topeka, 464 F.3d 1164, 1171 (10th Cir. 2006).  Defendant does not dispute that plaintiff's request for FMLA constituted protected activity or that termination is an adverse employment action.  Thus, the court addresses whether plaintiff has met the third element, the requisite causal connection.

To establish the third element of a prima facie case of retaliation, plaintiff must show a causal connection between her protected activity of taking FMLA leave and defendant's decision to terminate her employment.  Id.  The "critical inquiry" at this prima

facie stage is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination." Id. The Tenth Circuit has long-recognized temporal proximity between protected conduct and termination as relevant evidence of a causal connection sufficient to "justify an inference of retaliatory motive." Id. The court has also emphasized, however, that a plaintiff may rely on temporal proximity alone only if "the termination is very closely connected in time to the protected activity." Id.

Because plaintiff's protected activity was only three days prior to her termination, the court finds that there are disputed facts as to whether plaintiff was terminated in retaliation for protected activity under the FMLA. Defendant's motion for summary judgment on plaintiff's retaliation claim is therefore denied.

**IV. Conclusion**

Plaintiff's motion for summary judgment (Doc. 43) and defendant's motion for summary judgment (Doc. 42) are denied. On or before August 31, 2010, the parties are directed to submit a proposed agreed-upon Rule 56(d)(1) statement and proposed instructions. The clerk is directed to set this case for trial after September 1, 2010.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in Comeau v. Rupp. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

-12-

IT IS SO ORDERED.

Dated this __6th__ day of August 2010, at Wichita, Kansas.

                                                s/ Monti Belot
                                                Monti L. Belot
                                                UNITED STATES DISTRICT JUDGE